OPINION
On April 24, 2001, the Stark County Department of Job and Family Services filed a complaint alleging Evonna Waiters born July 24, 1996, Arayah Culler born October 13, 1997, and Alexis Waiters-Wilder born November 9, 1998, to be dependent, neglected and abused children. Mother of the children is appellee, Harsha Waiters. Father of Evonna and Alexis is appellant, Curtis Wilder; father of Arayah is Trevin Culler. The complaint was filed based upon concerns of domestic violence in the children's home between appellee and her boyfriend, Ray Womack. By judgment entry filed April 26, 2001, the trial court granted temporary custody of Evonna and Alexis to appellant and Arayah to the Department.
A hearing was held on June 28, 2001. By judgment entries filed same date, the trial court found the children to be dependent, and ordered the children returned to appellee with protective supervision to the Department, as well as a no contact order between Mr. Womack and the children.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS TO LAW WHEN IT, AFTER FINDING THAT MOTHER WAS A VICTIM OF DOMESTIC VIOLENCE AND THE CHILDREN WERE DEPENDENT BASED ON THEIR HOME ENVIRONMENT, RETURNED THE CHILDREN TO THE CUSTODY OF THEIR MOTHER, PRIOR TO THE MOTHER OR THE CHILDREN RECEIVING ANY SERVICES AS RECOMMENDED BY THE DEPARTMENT OF JOB AND FAMILY SERVICES, AND ORDERED BY THE COURT.
 I
Appellant claims the trial court abused its discretion in returning the children to appellee's custody after a finding of dependency. The Department also argues that the trial court erred. We disagree.
R.C. 2151.353 governs the disposition of abused, neglected, or dependent children. Subsection (A) provides the following in pertinent part:
 If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
Place the child in protective supervision;
 Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;
 Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 Commit the child to the permanent custody of a public children services agency or private child placing agency * * *.
 Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings.
In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
There is no challenge to the finding of dependency. Appellant challenges the trial court's action of returning the children to appellee with protective supervision. It is the position of appellant and the Department that this disposition is contrary to the trial court's finding that "(m)other is involved in a domestic violence relationship which creates an unsafe and unhealthy environment for her children."[1] See, Judgment Entry filed June 28, 2001. The disposition is also contra to the recommendation of the guardian ad litem. See, Adjudicatory Report filed June 21, 2001. The guardian ad litem recommended "that the children stay in their current placements and that the court order a more structured visitation with the children. * * * I believe that it is in their best interests to stay in their current relative placement * * *."
During the adjudicatory phase of the hearing, Helen Ross, appellee's aunt and guardian, testified appellee came to see her because "[s]he was running for her life" from her boyfriend. T. at 9, 18. Appellee appeared to have been beaten. T. at 11-12. Appellant testified he observed his children playing outside at appellee's home so he stopped. T. at 21. Appellee's boyfriend, Mr. Womack, ran him off the property with a "pistol in his hand." T. at 21. Erlene Waiters, appellee's grandmother, testified when she went to visit appellee, Mr. Womack chased her and her daughter Tonya off the property. T. at 27. Ms. Waiters testified to excessive "discipline with regard to the potty training" of "Lexie Pooh" by Mr. Womack, and observed "marks on her behind." T. at 30-31. Ms. Waiters stated she's "been afraid for her [appellee] for a long time that he's [Mr. Womack] gonna kill her." T. at 37. Ms. Waiters also admitted to being "in fear of the children's if they were to remain in that home." T. at 37. Tkeisha Waiters, appellee's sister, also testified to physical abuse sustained by appellee at the hands of Mr. Womack. T. at 39-40. Ms. Waiters admitted appellee is not a "bad mother' and she has never seen any "indication that the children have been neglected or abused" by appellee. T. at 41-42.
Missy Smith, the Department's intake investigation worker assigned to this case, testified if the children were returned to appellee "while she is with Mr. Womack I have serious concerns for these children. If Mr. Womack was not in the picture those concerns would be lessened a great deal." T. at 45. The Department's initial concerns involved "domestic violence occurring in the home" between appellee and Mr. Womack. T. at 44. There was no evidence that the children were present when appellee suffered any abuse. T. at 55. Appellee claimed Mr. Womack did not abuse her and denied prior accusations against him. T. at 58-60, 65-68.
At the close of the adjudicatory phase, the trial court found neglect and abuse had not been proven by clear and convincing evidence, but found the children to be dependent:
 in accessing the evidence the Court is unable to find that the allegations of neglect or abuse that have been indicated here are proven by clear and convincing evidence. The remaining allegation being dependency the court finds that based upon the totality of the evidence and accessing the credibility of witnesses that ah the testimony of the Mother ah is not as credible as that of the witnesses with regards to injuries that she displayed and the dangers that the children can be put in based upon the domestic violence. Accordingly these children are found dependent.
T. at 84.
During the dispositional phase of the hearing, Doug Farmer, the Department's ongoing family service worker assigned to this case, testified he had no knowledge of whether appellee or Mr. Womack had fulfilled any part of the case plan. T. at 88. He believed "at this time" the no contact order was being obeyed. T. at 89. Mr. Farmer requested temporary custody of Arayah and only protective supervision of Evonna and Alexis. T. at 89.
The trial court announced its decision in open court and we concur with the insightful analysis of the evidence or lack thereof against appellee:
 All right. Harsha I didn't say this um specifically or directly when I announced my decision regarding dependency. I think that it's important that I do that in disposition. * * * Um there is no evidence that you're not properly carrying for your children but frankly the Court is convinced that you ah find yourself in a relationship where you are victim of domestic violence. The Court finds no reason for these people who testified that they saw observed injuries and had you confess that Mr. Womack gave you those injuries. I find no reason for these people to come into Court and lie. I do find a reason for you to do that. Um therefore I am convinced that that is a relationship that you find yourself in and I do recognize that children who live in these homes while they may not be subjected to violence themselves who observe this violence are in not only unhealthy but are in dangerous environments. It may seem unfair for you ah if the Court tells you that you basically have to choose between your children or Mr. Womack but that's exactly the case here. I'm not going to permit these children to be in your care if you're going to subject them to this to what's brought you to Court and so that is a decision that you may make and if you choose to be with Mr. Womack I am going to remove those children from your care. Now the Court Order at this time will be that the children be returned to you as of Sunday subject to a condition of a No Contact Order that I will enforce and any violation of that will be treated in a very harsh manner.
* * *
 Um subject to protective supervision by the Agency and an Order that she not permit Mr. Womack to have any contact with the children.
T. at 95-96.
In fact, the trial court concurred with Mr. Farmer on the disposition as to two of the children. Given the quality of the evidence presented, we cannot say the trial court abused its discretion in ordering return of the children to appellee with protective supervision.
The sole assignment of error is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] No party has complied with Loc.R. 9(A)(1) of the Fifth Appellate Judicial District in providing a typed judgment entry of the trial court.